**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

---

JC SERVICES, LLC; and J&J
INVESTMENTS, LLC,

      Plaintiff,

    v.                                                   Case No. 24-cv-1170 KWR/GJF
                                                        Case No. 24-cv-1260-KWR/GJF

CERTAIN UNDERWRITERS AT
LLOYD'S OF LONDON; CERTAIN
UNDERWRITERS AT LLOYD'S OF LONDON
d/b/a Hamilton Insurance DAC; and
NATIONAL AMERICAN INSURANCE COMPANY,
      Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS COUNT II AND COUNT III OF PLAINTIFFS' AMENDED COMPLAINT**

      THIS MATTER comes before the Court upon Defendants Certain Underwriters at Lloyd's of London Subscribing to Policy No. PO2022MEE1000SP's (hereinafter Defendants or "Underwriters") Partial Motion to Dismiss Counts II and III of Plaintiffs' Amended Complaint. **Doc. 12**.[1] Having reviewed the pleadings and applicable law, this Court finds that Defendants' motion is well-taken and, therefore, **GRANTED**.

---

[1] This motion arises out of a set of consolidated cases: *National American Insurance Company v. JC Services, LLC and J&J Investments LLC* (Case No. 24-cv-1170 GBW/GJF) and *JC Services, LLC and J&J Investments, LLC, v. Certain Underwriters at Lloyd's of London; Hamilton Insurance DAC, and National American Insurance Company* (Case No. 24-cv-1260). On February 12, 2025, Defendants filed this Motion to Dismiss in 24-cv-1260. **Doc. 12**. Plaintiffs filed their Response on April 4, 2025. **Doc. 21**. However, on April 10, 2025, the two cases were consolidated under 24-cv-1170, and then reassigned to the undersigned on May 12, 2025. Defendants thus filed their Reply, **Doc. 23**, under 24-cv-1170 KWR/GJF. Because the Motion was filed prior to the case consolidation, the Court directs this Memorandum Opinion and Order be filed under both 24-cv-1170 and 24-cv-1260.

1

## BACKGROUND

This case arises out of an insurance dispute involving the release of produced water from a pipeline serving a well which Plaintiff JC Services, LLC ("JCS") and J&J Investments, LLC ("J&J") (collectively Plaintiffs) owned. **Doc. 4 at ¶15.** Plaintiffs allege that the release resulted in state supervised remediation and significant investigation and remediation costs. *Id.* **at ¶16**. Plaintiffs argue that Defendants refused to provide indemnity and defense in connection with the remediation. *Id.* **at ¶17**.

In April of 2022, J&J, an oil and gas operator, purchased a network of oil and gas and "produced water" injection wells in the Shahara Unit in Lea County, New Mexico ("Subject Property"). *Id.* **at ¶ 19.** "Produced water" is a waste byproduct, and if it is not recycled or treated, is generally injected into saltwater disposal wells ("SWDs") for disposal. *Id.* Plaintiffs also purchased several insurance policies in case of environmental or other liability arising from the oil and gas operations to "ensure timely remediation and cleanup in the event of an accidental release." *Id.* **at 13**.

In February of 2023, Darr Angell, a surface occupant on the lands on which Plaintiff's operations take place, conducted his weekly inspection of the Subject Property. *Id.* **at ¶60**. Mr. Angell noticed a leak which appeared to be from a produced water line on the Subject Property. *Id.* Mr. Angell reported the leak to a third party who reported the leak to JCS. JCS reported the leak to the New Mexico Oil Conservation Division ("OCD") as is required by law. *Id.* **at ¶61**. The State Land Office ("SLO") was also notified of the rupture and release. The OCD issued a remediation order to Plaintiffs. The OCD and SLO required J&J to remediate the soil contamination on the property. Plaintiffs are removing contaminated soil and conducting remediation activities. *Id.* **at ¶¶ 77-79**

Specifically at issue here is the policy Plaintiffs purchased from Lloyd's and underwritten by Defendants on October 6, 2022, effective from October 6, 2022 to October 6, 2023. The Policy required Plaintiffs to report any claims to Certain Underwriters during the policy period. Plaintiffs reported the claims at issue on March 20, 2023, during the policy period. *Id.* **at ¶63**. Plaintiffs allege that Underwriters denied coverage for multiple reasons, including the alleged priority of other insurance policies through Hamilton Insurance DAC ("Hamilton") and National American Insurance Company ("NAICO"). *Id.* **at ¶ 82.** Those insurers also denied coverage. *Id.* **at ¶87**.

After being denied coverage, Plaintiffs subsequently filed suit against Defendants, alleging breach of contract, violations of the New Mexico Unfair Insurance Practices Act ("NMUIPA"), breach of the covenant of good faith and fair dealing, and seeking additional declaratory relief. Defendants filed a partial motion to dismiss, alleging Plaintiffs could not support their NMUIPA or breach of the covenant of good faith and fair dealing. **Doc. 12**.

## LEGAL STANDARD

Rule 12(b)(6) permits the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a plaintiff's complaint must have sufficient factual matter that if true, states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("*Iqbal*"). As such, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*"). All well-pleaded factual allegations are "viewed in the light most favorable to the nonmoving party." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014). In ruling on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn*

*Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

## ANALYSIS

Plaintiffs invoke diversity jurisdiction, and the Court finds that they have made such a showing. **Doc. 4 at ¶8**. "In cases arising under diversity jurisdiction, the federal court's task ... simply to 'ascertain and apply the state law.'" *See Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665 (10th Cir. 2007) (quoting *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003)). The Court must follow the most recent decisions from the state's highest court, but where no controlling state decision exists, the Court "must attempt to predict what the state's highest court would do." *Id.* In doing so, the Court may "seek guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law." *Id.* at 665–66 (internal quotations and citations omitted).

Defendants seek to dismiss Counts II and III on two grounds. First, Defendants argue that Plaintiffs have merely recited the statutory elements without proper support. Defendants also argue that even evaluating the Amended Complaint as a whole, Plaintiffs cannot support their claims. The Court considers Plaintiffs' NMUIPA and breach of covenant of good faith and fair dealing claims in turn below. The Court finds that Plaintiffs' claims fail because Plaintiffs have not alleged sufficient facts to state a claim under the NMUIPA or for the breach of the implied covenant of good faith and fair dealing.

**I.     The Court will consider the Crosswalk Letter to which both parties refer without converting the motion to a motion for summary judgment.**

4

First, the Court can and will consider the documents to which both parties refer in this motion's briefing without converting it to a motion for summary judgment as the documents are central to the Court's inquiry.

Generally, "[w]hen evaluating a Rule 12(b)(6) motion, . . . we cannot consider information outside the complaint without converting the motion to one for summary judgment." *Platte Valley Wyo-Braska Beet Growers Assn. v. Imperial Sugar Co.*, 100 F. App'x 717, 719 n.1 (10th Cir. 2004); *Burnham v. Humphrey Hosp. Reit Tr., Inc.*, 403 F.3d 709, 713 (10th Cir. 2005) (same). "When a district court does this, it must provide the parties with notice so that all factual allegations may be met with countervailing evidence." *Burnham*, 403 F.3d at 713; *Christensen v. Big Horn Cnty. Bd. of Cnty. Comm'rs*, 374 F. App'x 821, 826 (10th Cir. 2010) (same).

However, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) (citing *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir.1997).  To support their claim that Underwriters wrongfully denied coverage, Plaintiffs refer to and rely on the October 13, 2023 letter (the "Crosswalk Letter"), alleging that Underwriters "issued a letter denying coverage to JCS and J&J" and that the Letter cites "numerous, alleged, grounds for the denial." **Doc. 4 at ¶¶ 81-82.** Although not attached to the Complaint, the Crosswalk Letter is key to Plaintiffs' claims against Defendants.  Counts II and III rest on the allegation that Defendants should have acknowledged coverage under the Policy and instead "wrongfully denied" coverage. Thus, what Plaintiffs refer to as the "denial letter" and what Defendants refer to as the "Crosswalk Letter" is central to the claims at issue here. Further, its authenticity does not appear to be in question— Defendants attach it in their Motion to Dismiss, **Doc. 12-1**, and Plaintiffs do not contest it.  *See*

*Apodaca v. Young Am. Ins. Co.*, 702 F. Supp. 3d 1094, 1132–33 (D.N.M. 2023) (considering an insurance policy to be central to a claim arising out of bad faith). The Court will therefore consider the Crosswalk Letter in addition to the voluminous record provided in the Amended Complaint.

## II. The Court will dismiss Count II because Plaintiffs do not properly allege a violation of the New Mexico Unfair Insurance Practices Act

Plaintiffs have failed to properly state a claim under the NMUIPA because they merely recite the elements of the statute and cannot show Defendants acted in bad faith.

The New Mexico Insurance Practices Act (NMUIPA) prohibits insurance companies from engaging in unfair insurance practices. N.M. Stat. Ann. § 59A-16-20. The insurance company must engage in that unfair practice *knowingly* or "with such frequency as to indicate a general business practice. . . ." *Id.*

Plaintiffs allege that Defendants violated the NMUIPA by knowingly:

1. misrepresenting to insureds pertinent facts or policy provisions relating to coverages at issue (N.M. Stat. Ann. § 59A-16-20(A));

2. failing to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims arising under policies (N.M. Stat. Ann. § 59A-16-20(C)); and

3. not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear (N.M. Stat. Ann. § 59A-16-20(E)).

**Doc. 4 at ¶¶99–104.**

Notably, Plaintiff's Amended Complaint merely recites the statutory elements of each prohibited insurance practice. *Ashcroft*, 556 U.S. 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Despite including over 300 pages of exhibits, Plaintiffs make no effort to cite to them, nor offer specific facts, either contained within the exhibits or otherwise alleged, that would support these claims. *See Eateries, Inc. v. J.R. Simplot Co.*, 346 F.3d 1225, 1232 (10th Cir. 2003) ("[The Court] need not sift through

the record to find [evidence to support a party's argument], nor manufacture a party's argument for [it]."). Plaintiffs' Response is likewise devoid of any authority to support their position. *See* D.N.M.-LR 7.3(a) ("A motion, response or reply *must* cite authority in support of the legal positions advanced. (emphasis added)"). The Court could dismiss Count II based on its threadbare nature alone. *Ashcroft*, 556 U.S. at 678; *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)("[I]f [allegations in a complaint] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." (citation omitted)).

Moreover, while Plaintiffs attempt to save each of the three NMUIPA violations in their Response, the facts to which they point do not support finding violations under the three subsections their Amended Complaint alleges.

First, Plaintiffs' alleged facts demonstrate that Defendants were not under an obligation to defend or indemnify because other policies took precedent. According to the Lloyd's insurance policy and the Crosswalk Letter, "Coverage under the [Lloyd's] Policy is excess of a $5,000,000 Hamilton policy which itself is excess of a $1,000,000 NAICO primary policy." **Doc. 12-1 at 8**. Plaintiffs confirm that there is coverage under the NAICO CGL Policy and NAICO Excess Policy, and the Hamilton Excess Policy follows form to the NAICO CGL Policy. **Doc. 4 at ¶¶ 17, 47, 48, 89, 98.** Plaintiffs also retained a duty to "satisfy the $100,000 self-insured retention toward the claim before Underwriters are required to pay any amount." **Doc. 12-1 at 11**. Thus, "the underlying policies take[] priority over coverage under the Lloyd's Policy." **Doc. 4 at ¶40**. And the Crosswalk Letter confirms this: "Because the Underwriters policy provides excess coverage, JC Services should pursue coverage for this claim under the NAICO policies and Hamilton policy." **Doc. 12-1 at 11.**

According to Plaintiffs' own allegations, Plaintiffs had not exhausted the underlying insurance policies, meaning that Defendants' duties had not yet been triggered at the time Plaintiffs sought coverage.  Nor have Plaintiffs alleged factors demonstrating that they satisfied the self-insured retention requirement.  ***See generally* Doc. 4.**  This means that Defendants' actions did not trigger the NMUIPA. *Mayer Botz Enters. LLC v. Cent. Mut. Ins. Co.*, 720 F. Supp. 3d 1081, 1085–86 (D.N.M. 2024) ("Where there is no duty to defend and no right to indemnification under an insurance policy, courts have dismissed claims for bad faith and violations of the UIPA."); *OR&L Constr., L.P. v. Mountain States Mut. Cas. Co.*, 2022-NMCA-035, ¶ 38, 514 P.3d 40, 51 ("However, an insured cannot raise a claim of bad faith based on an insurer's failure to pay a covered claim unless the insured can establish that coverage exists.); *Haygood v. United Servs. Auto. Ass'n*, 2019-NMCA-074, ¶ 21, 453 P.3d 1235, 1242 ("[W]e have regularly recognized that claims of bad faith failure to pay cannot "arise unless there is a contractual duty to pay under the policy[.]").  Because Defendants were not under a duty to act, Plaintiffs cannot establish that Defendants violated the NMUIPA.

Second, even if the policy had been triggered, the facts Plaintiffs offer in their Response from the Amended Complaint do not demonstrate that Defendants knowingly misrepresented pertinent factors or policy provisions relating to the coverage at issue.  Plaintiffs thus cannot establish an NMUIPA violation, even assuming Defendants were under a duty to act.

First, Plaintiffs have not properly alleged that Defendants knowingly misrepresented facts related to coverage or to the availability thereof.  Despite making only threadbare allegations in their Amended Complaint, Plaintiffs argue that they made three allegations regarding Defendants' supposed misrepresentations:

1. That Defendants "denied that J&J was an insured, in the face of J&J specifically being identified as a named insured, thereby misrepresenting facts relating to availability of coverage." **Doc. 21 at 6** (citing Doc. 4 at ¶¶ 30-32);

2. That Defendants "denied that the event occurred during the policy period, even though it did, again misrepresenting facts relating to coverage." *Id.* (citing Doc. 4 at ¶¶ 61-64, 71-77); and

3. That Defendants "asserted that, in any event, its coverage was secondary, while, at the same time, contending that the release was not sudden and accidental, again misrepresenting coverage and failing to appropriately investigate the claim." *Id.* (citing Doc. 4 at ¶ 82).

However, Plaintiff's characterization of the facts in their Response is not what they proffer in the Amended Complaint. First, the Complaint does not, as Plaintiffs assert, allege that Defendants misrepresented facts of coverage by denying that J&J was an insured, despite allegedly being named as a named insured. **Doc. 21 at 8**. The Amended Complaint does allege that J&J is a "responsible insured", but a review of the Underwriters Policy establishes that a "responsible insured" is not a "named insured", nor is it an "insured" as defined by the Policy, meaning they have different rights and protections under the policy. **Doc. 4 at 47–48**; **Doc. 4-1** (Lloyd's Policy, which states that "[t]he named insured is primarily responsible for the payment of all premiums and will act on behalf of all other insureds . . . ."). The Crosswalk Letter did not deny coverage on this ground, but rather reserved its right to do so. **Doc. 12-1 at 8**. This does not constitute a knowing misrepresentation of the facts of coverage where the policy clearly dictates that 'named insureds,' 'responsible insureds,' and 'insureds' may have different rights to coverage and Defendants did not deny coverage on those grounds. *See Hauff v. Petterson*, 755 F. Supp. 2d 1138, 1145 (D.N.M. 2010) (An insurer acts in bad faith when "its reasons for denying or delaying payment of the claim are frivolous or unfounded." (citation omitted)); *c.f. Am. Nat. Prop. & Cas. Co. v. Cleveland*, 2013-NMCA-013, ¶ 13, 293 P.3d 954, 958 ("As we have discussed, an insurer

has a right to refuse a claim without exposure to a bad faith claim if it has reasonable grounds to deny coverage.").

Moreover, Plaintiffs assertion that Defendants "denied that the event occurred during the policy period, even though it did" is unfaithful to the facts alleged in the Amended Complaint. **Doc. 21 at 8**. Plaintiff does allege that Defendants denied the claim because the loss "commenced before the Lloyd's Policy's Retroactive Date." **Doc. 4 at ¶82**. However, the Crosswalk Letter demonstrates that Defendants did not outright deny coverage, only that it reserved its right to do so should investigations reveal that the Release happened outside of the policy's coverage dates. **Doc. 12-1 at 10**. Moreover, Plaintiffs do not allege that Defendants knew for sure that the event occurred during the policy period, or that they denied that the event occurred during the policy period. **Doc. 4 at ¶¶61–64, 71–77.** Thus, Plaintiffs cannot establish that Defendants misrepresented pertinent facts or policy provisions relating to coverages at issue, much less that they did so knowingly. N.M. Stat. Ann. § 59A-16-20(A)).

Additionally, Plaintiffs mischaracterize what they alleged as pertaining to Defendants' supposed failure to investigate. Plaintiffs assert the Complaint alleges that "[Defendants] failed to undertake any reasonable investigation to determine when the event occurred, thereby failing to promptly and reasonably investigate and process the claims." **Doc. 21 at 6;** *see Sloan v. State Farm Mut. Auto. Ins. Co.*, 360 F.3d 1220, 1224 (10th Cir. 2004)("[A]n insurer's failure to investigate or competently defend may be evidence of bad faith."). However, there are no general or specific allegations in Paragraphs 80–84 of what investigation Defendants supposedly undertook or how it was deficient. **Doc. 4 at ¶¶ 80-84**. Additionally, the Crosswalk Letter demonstrated that Defendants reserved judgment on the denial of insurance, and instead intended to continue investigating. **Doc. 12-1 at 9**. It made no determination on whether the release was accidental or

10

not. *See generally* **Doc. 12-1** (Crosswalk Letter does not contain the words "sudden" or "accidental."). While it is true that the NMUIPA imposes a duty to reasonably investigate claims, N.M. Stat. Ann. § 59A-16-20(C), Plaintiffs' allegations are insufficient to establish that Defendants knowingly failed to investigate the claim.

Finally, Plaintiffs do not point to any facts in either the Amended Complaint or their Response to support their claim under § 59A-16-20(E), which prohibits "not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear." N.M. Stat. Ann. § 59A-16-20(E). New Mexico courts have "regularly recognized that claims of bad faith failure to pay cannot arise unless there is a contractual duty to pay under the policy." *Haygood*, 453 P.3d at 1242 (citation edited). But Defendants did not act erroneously, frivolously, or for reasons that were unfounded. *See Sloan v. State Farm Mut. Auto. Ins. Co.*, 2004-NMSC-004, ¶ 18, 135 N.M. 106, 113, 85 P.3d 230, 237. Plaintiffs did not establish that they were contractually entitled to coverage. And even if Defendants were incorrect about their duty to act, "[a]n insurer's incorrect decision regarding coverage, without more, does not establish bad faith." *Winters v. Transamerica Ins. Co.*, 194 F.3d 1321 at *4 (10th Cir. 1999) (unpublished). Without more, Plaintiffs cannot establish that Defendants violated § 59A-16-20(E). *See Ashcroft*, 556 U.S. at 678 (A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." (citation omitted)).

Even taking these restated allegations in the Response as being loyal to the facts alleged in the Complaint, Plaintiffs still have not alleged facts demonstrating that Defendants *knowingly* misrepresented the facts of coverage or failed to investigate.[2] N.M. Stat. Ann. § 59A-16-20

---

[2] Plaintiffs argue that "[a]ll these claims are well plead. If true, they obviously implicate the Unfair Practices Act." **Doc. 21 at 8**. However, despite Plaintiffs' assertion of obviousness, they offer no case law to support their supposed

(requiring that the insurer violate the act knowingly); *see also Lovato*, 73 P.3d at 253 (The Act, however, requires that an insurer must *knowingly* misrepresent to insureds pertinent facts relating to coverages at issue." (emphasis in original)). Plaintiffs thus fail to satisfy the pleading standard to survive a Rule 12(b)(6) motion. *Ashcroft*, 556 U.S. at 678 (A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." (citation omitted)). The Court will therefore grant Defendants' Motion as to Count II.

### III. The Court will dismiss Count III because Plaintiffs do not show that Defendants breached the implied covenant of good faith and fair dealing.

Similarly, the Court will dismiss Count III as it pertains to Defendants Certain Underwriters because Plaintiffs have not established that Defendants acted in bad faith.

As a preliminary matter, to the extent that a bad faith claim depends on the existence of coverage, Plaintiffs have not satisfied this element. *Haygood*, 435 P.3d at 1242. As discussed at length *supra*, Plaintiffs did not allege that they had satisfied the preconditions necessary to implicate Defendants' coverage. Based on the facts before the Court, Defendants did not have a contractual obligation to act. This alone likely renders Plaintiffs' Claim III dead in the water. *Id.* (Finding that a theory of bad faith was "unavailing because. . . we have regularly recognized that claims of bad faith failure to pay cannot arise unless there is a contractual duty to pay under the policy." (quotations omitted)).

More broadly, "[t]he obligation to deal fairly and honestly rests equally upon the insurer and the insured." *Modisette v. Found. Reserve Ins. Co.,* 77 N.M. 661, 427 P.2d 21, 25 (1967) (citations omitted). New Mexico law provides that "an insurer who fails to pay a first-party claim has acted in bad faith where its reasons for denying or delaying payment of the claim are frivolous

---

foregone supposition. *See* D.N.M.-LR 7.3(a) ("A motion, response or reply *must* cite authority in support of the legal positions advanced. (emphasis added)).

or unfounded." *Sloan*, 85 P.3d at 236.  In the context of bad faith, unfounded means "essentially the same thing as reckless disregard, in which the insurer *utterly* fail[s] to exercise care for the interests of the insured in denying or delaying payment on an insurance policy."  *Id.* at 237 (emphasis and edits in original, quotations omitted).  Similarly, a frivolous refusal to pay is "an arbitrary or baseless refusal. . . recklessly lacking any arguable support in the insurance policy or facts of the case."  *Hauff*, 755 F. Supp. 2d at 1145 (citing *Sloan*, 85 P.3d at 236). "An insurer's incorrect decision regarding coverage, without more, does not establish bad faith." *Winters*, 194 F.3d at *4 (unpublished).

As already established, Defendants did not outright deny Plaintiffs' claims.  **Doc. 12-1 at 11** ("In summary, Underwriters owe no duties under the Policy *at this time*, but will continue their investigation subject to full and complete reservation all of rights including the right to deny coverage. . . ." (emphasis added)).  However, they did refuse to pay at the time the claim was filed, even though Defendants acknowledged that upon receipt of new information, their stance could change.  *Id.*  Thus, despite Defendants' arguments to the contrary, they have implicated the refusal-to-pay inquiry, and the Court must thus engage.

However, the record before the Court does not reflect that Defendants' reservation and thus refusal to pay was arbitrary or baseless.  The Amended Complaint alleges that Defendants reviewed the claim, denied it, and then received a challenge to the denial.  **Doc. 4 at ¶¶ 80–83.** Plaintiffs' Response relies on facts not in the Amended Complaint—that Defendants somehow failed to investigate, that they knew about coverage issues with other policies and used other insurance companies' decision to deny coverage as cover for its own decision. **Doc. 21 at 7**.  These allegations are neither in the Complaint nor anything more than speculative. *Ashcroft*, 556 U.S. at 678 (rejecting "naked assertions devoid of further factual enhancement." (citation edited)).

Defendants were under the impression based on the information before them that they did not currently owe a duty to Plaintiffs. *See* **Doc. 12-1 at 11**. As laid out in the Crosswalk Letter, Defendants had reason to believe that Plaintiffs had an obligation to seek out coverage from NAICO and Hamilton, as well as fulfill their self-insured retention obligation, before Defendants owed Plaintiffs coverage. **Doc. 12-1 at 10–11.** This does not constitute bad faith on Defendants' part, even should Plaintiffs have proffered information that Defendants were incorrect in their readings of the insurance policy. *Winters*, 194 F.3d at *4 (An insurer's incorrect decision regarding coverage does not establish bad faith without more evidence). A refusal to pay where Defendants did not think they needed to does not constitute reckless disregard for Plaintiffs' interests or establish arbitrary or baseless decision-making. *Hauff*, 755 F. Supp.2d at 1145 ("Where the insurer had a legitimate reason to question the amount of damages claimed by the insured, a finding of bad faith is improper.").

Plaintiffs cannot establish that Defendants acted in bad faith in reserving their right to refuse coverage altogether and declining to cover Plaintiffs' initial claim. The Court will therefore dismiss Count III as it pertains to Defendants.

## CONCLUSION

Defendant's Partial Motion to Dismiss (**Doc. 12**) is **GRANTED**. Counts II and III against Defendants Certain Underwriters at Lloyd's of London Subscribing to Policy No. PO2022MEE1000SP's are **DISMISSED**.

**IT IS SO ORDERED.**

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE